Robert Bondick
2755 E. Lone Oak Loop Apt #C
Eugene, OR 97404
541-688-1860
jjbonrichard@yahoo.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BONDICK, ROBERT, PRO SE., <br><br> Plaintiff, <br> v. <br><br> LANE COUNTY, THE CITY OF EUGENE, THE CITY OF EUGENE POLICE, LANE COUNTY DISTRICT ATTORNEYS OFFICE, EUGENE CITY PROSECUTORS OFFICE AND JESSICA SAYDACK <br> Defendants. | Case No.: 6:21-cv-1312-MC <br><br> CIVIL CONSPIRACY; LEGAL MALPRACTICE; OBSTRUCTION OF JUSTICE; NEGLIGENCE; VIOLATION'S OF SIXTH AMENDMENT <br><br> REQUEST FOR JURY TRIAL AND A MONETARY PRAYER FOR $10,000,000.00 |

Preliminary Statement

Plaintiff is a resident of Lane County Oregon who's Sixth Amendment right to a speedy criminal trial was violated. A year of criminal trial hearings (approximately 14) that arose from an arrest at Jameson's Bar at 115 W. Broadway, Eugene, OR. The first hearing took place at the lane county Adult Corrections facility, the morning after being held over night in a jail cell. The second hearing took place at the Down Town Eugene Public Library the fallowing day. The rest of the hearings took place at The Eugene municipal court.

At the initial hearing, Plaintiff rejected legal representation to proceed pro se. Plaintiff was released and immediately admitted him self to the Emergency room for loss of feeling in both hands. Later a clinical diagnosis of nephropathy in the left pinky finger was discovered by a neurologist. Additional injuries arose causing Plaintiff to wear a left arm shoulder brace and left arm compression sleeve in addition to padded gloves while riding a bicycle, his only transportation for fourteen years. The extra layer of clinical sports gear is to help the circulation in the left arm as it becomes completely numb after 20-30 minutes of riding, again

all a direct result of the arrest. Also a clinical Finkelstein's in both wrist plus finger cuticles are very dry. And a sunken in vain that is plain to see in the left arm, not yet diagnosed.

A complaint to the Police Auditors in down town Eugene Oregon, found the E.P.D. used the hand cuffs (hinged) incorrectly and had made an adjustment to correct it. The Plaintiff is seen on the ground with a Police officer over top of him. The report states Plaintiff was taking to the ground. The Patrol car video shows Plaintiff banging his head against the back seat for a half hour to forty five minutes due to the discomfort of the hand cuff. It is a direct result of either being thrown to the ground, incorrect use of hand cuffs and or banging hes head against the seat in pain that has left the litigant in pain and in search for further clinical diagnoses and relief.

The Police Worn Body Cam Videos (P.W.B.C.) shows the officer pull Plaintiff off the ground then ask the bouncer about an early alleged incident with the Plaintiff that night. The bouncer said "No". There is no way the officer could have had knowledge of an earlier allegation with out a crystal ball. This conspiracy is plain to see on the P.W.B.C. Body cams and patrol cars who's time stamps all read the same, about: 4:30 am. Long after all the bars are closed yet many people can be seen walking the street going in and out of the bar. This Video was requested three times from the police, once from the Municipal Court clerk, two or three times from the City Prosecutors Office and the partial public defender Jessica Saydack. Theses requests all were either denied, forgotten about, dismissed, and ignored. Plaintiff brought the complaint to the District Attorney's Office for obstruction of justice against the City Prosecutors Office for not producing the video at any of the twelve trial ready hearings. The D.A. did not investigate the Prosecutors Office, instead investigated the Police Department. A new complaint to DA's internal team for misconduct of the investigation and they found nothing wrong. The Prosecutors office did in mid stream invite Plaintiff to the Municipal Court to watch the four and half hour of PWBC videos alone in a court room with a secretary from the City Prosecutors. Additionally the Eugene Police finally after the forth request offered it for $3.5k.

Plaintiff made a complaint to the Oregon BAR against both the DA and Jessica Saydack. Jessica made many false allegations in the responses. During that time Plaintiff made another request for the videos by certified mail and email again with no response. She told the Bar her and Plaintiff watched the videos together at her office during the sum odd hours that she put on her books when actually Plaintiff never watched any videos with her and only spent two and half hours there. The Bar said the video was in the mail then a few

days latter said they had trouble with the video and asked Jessica to send a copy to the Plaintiff. Plaintiff still has not received the discovery.

During onslaught of hearings each of the judges repeatedly continued to suggest Plaintiff opt for a public defender. It was after about the eight or ninth hearing as plaintiff still did not receive any discovery from the City, is when the request for a public defender was made. Hoping that the new legal help would help with getting the evidence and closing the case. The Public Defender made three appointments with the Plaintiff. The first one was for an hour, the second one was for a half hour because Plaintiff showed up late. At that appointment Jessica announced the videos had been received from the City Prosecutors. She went on to say there was no audio on the video and the Plaintiff said that was obstruction of justice. They never watched the videos to gather and all though plaintiff made many request for any copy available all the requests were ignored with no reply to text messages and emails. A third appointment was made and when Plaintiff arrived the secretary said to call and re-schedule because she was not gonna be in the office that day. A forth appointment was never made.

Plaintiff sent a letter to Jessica, The City Prosecutors and The Municipal court that Plaintiff once again declared to proceed pro se relieving the Public Defender of representational duties. A motion was made by Plaintiff to penalize the City Prosecutors for not producing the discovery. That motion was ignored and when Plaintiff showed up to the next hearing or so, Jessica showed up to represent the Plaintiff. Plaintiff made it clear that day to both the judge and the Public Defender that a letter was sent to everyone and Plaintiff continues to chose to proceed with representation. The Judge scheduled another trial ready hearing, the finale one and she showed up again. This time she demanded she would make a deal with prosecutors but not with out his consent. As Plaintiff sat in the court room alone, the Public defender was going back and forth from the judges chambers to the court room relaying messages. Finally she came back the last time and said "I told you I wasn't gonna do it, but I just made a deal with Prosecutors. There gonna drop all the charges." Legal Malpractice.

### Summery

One of the policemen would have of found a reason to leave his fellow officer while handcuffing the Plaintiff as he was allegedly resisting arrest and go inside to question the bartender as Plaintiff was getting pulled off the ground. Then the second officer with in a

matter of two minutes or less would have either radioed in to his partner or come back out side to relay the information. The first officer asked the bouncer while still out side, if he knew anything about this new information of an earlier allegation that evening. The Bouncer said 'no' he was not aware of any prior indecent and asked if he could go back inside to finish working.

Collusion between the Municipal Court, Public Defender and City Prosecutors to keep the evidence away from the Plaintiff and from it being shown in court. That is why the court did not step in after the second or third hearing to say 'where is the evidence?'. The video not only shows the premeditated conspiracy between the Bar tender and Police Officer but it also shows the negligence that led to Plaintiffs physical injury's. That is the reason the City Prosecutors had to drag the matter out and drop the case as well as decline to release the videos.

## Prayer For Relief

1. Injunctive relief to demand the City Prosecutors and Jessica to make the Video available to the Plaintiff.
2. Monetary relief:  1 million Dollars for Physical injury's, 1 million Dollars for the mental stress and collusion to violate the Sixth Amendment plus interest
3. Punitive Damage $8,000,000.00.
4. Jury Trial
5. Further awards as the court sees fit and justice requires.

Dated this 3rd day of September, 2021        By: _____

Robert S. Bondick
2755 E. Lone Oak Loop Apt., #C
Eugene, Oregon 97404
Telephone: 541.688.1860
Email: jjbonrichard@yahoo.com